**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BRIAN C. ANMUTH, VMD d/b/a SIMMONS ANIMAL HOSPITAL, individually and as the representative of a class of similarly situated persons and entities, | No. |
| Plaintiff, | **CLASS ACTION** |
| v. | **JURY TRIAL DEMANDED** |
| ANTECH DIAGNOSTICS, INC., a Delaware corporation, | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff, Brian C. Anmuth, VMD d/b/a Simmons Animal Hospital ("Plaintiff"), through undersigned counsel, brings this action on behalf of himself and similarly situated persons and entities that Antech Diagnostics, Inc. ("Antech") sent unsolicited advertisements by fax. Plaintiff makes the allegations based on personal knowledge with respect to facts known to Plaintiff and otherwise on information and belief after a reasonable investigation by counsel.

## PRELIMINARY STATEMENT

1. The Telephone Consumer Protection Act, 47 U.S.C. § 227, prohibits sending an "unsolicited advertisement" by fax. 47 U.S.C. § 227(b)(1)(C).

2. On October 17, 2023, January 3, 2024, and March 19, 2024, Plaintiff received unsolicited Antech advertisements on his fax machine. True and correct copies are attached as Exhibits A-C.

3. Exhibits A-C promote Antech's commercially available diagnostic services, laboratory services, and related supplies by encouraging veterinary practices to use Antech's

HealthTracks platform to order and manage those services and supplies.

4. Antech did not have Plaintiff's prior express invitation or permission to send advertising material to his telephone facsimile machine.

5. The TCPA provides a private right of action and statutory damages of $500 per violation. 47 U.S.C. § 227(b)(3). If it finds that Antech willfully or knowingly violated the Act, the Court may increase the award to $1,500 per violation. The Court may also grant injunctive relief.

6. Exhibits A-C contain no opt-out notice, so Antech cannot rely on an "established business relationship" to justify its unsolicited facsimile advertisements. 47 U.S.C. § 227(b)(1)(C)(i) and (iii).

7. Unsolicited fax advertisements cause concrete harm. Plaintiff maintains a telephone facsimile machine and a fax number to send and receive urgent, important, and confidential information, including patient medical records, not to send or receive unsolicited advertisements. Antech's unsolicited advertisements automatically printed, consuming Plaintiff's paper and toner. Plaintiff also had to review the faxes to determine their source, purpose, and nature, consuming time and using the fax equipment Plaintiff maintains for authorized veterinary-practice communications.

8. On behalf of himself and all others similarly situated, Plaintiff brings this action seeking statutory damages and other relief for Antech's violations of the TCPA occurring within the four years before this action was commenced.

**<u>PARTIES, JURISDICTION, AND VENUE</u>**

9. Plaintiff, Brian C. Anmuth, VMD, is a licensed veterinarian. He practices veterinary medicine under the registered fictitious name Simmons Animal Hospital, located at 1500 Wolf Street, Philadelphia, PA 19145.

10. Defendant, Antech Diagnostics, Inc., is a Delaware corporation with its principal place of business located at 4550 Byrd Drive, Loveland, CO 80538. Antech is an affiliate of Mars, Incorporated. Antech is registered to do business in Pennsylvania. Its registered agent in Pennsylvania is CT Corporation System, 600 North 2nd Street, Suite 401, Harrisburg, PA 17101.

11. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

12. Personal jurisdiction exists over Antech because Antech transacts business in Pennsylvania and purposefully directed the challenged fax advertisements to Plaintiff's fax machine in Pennsylvania, causing the alleged statutory injuries in Pennsylvania.

13. Venue is proper in the Eastern District of Pennsylvania because Plaintiff is located within this District, Defendant committed statutory torts within this District, and a significant portion of the events took place here.

## FACTS

14. Antech is a for-profit veterinary diagnostic company that sells diagnostic testing, laboratory services, and related products and supplies to veterinarians and veterinary practices.

15. Plaintiff operates Simmons Animal Hospital, a veterinary practice located in Philadelphia, Pennsylvania.

16. On October 17, 2023, January 3, 2024, and March 19, 2024, Antech caused advertisements to be transmitted to Plaintiff's telephone facsimile machine, connected to Plaintiff's fax number, (215) 468-6820. True and correct copies of the advertisements are attached as Exhibits A-C.

17. Each fax prominently identifies and promotes Antech. The faxes display Antech's name and logo, identify Antech's telephone number and website, promote "Antech diagnostics," and direct recipients to Antech's HealthTracks platform. The contents of the faxes thus identify

Antech as the entity whose commercial services are being promoted.

18. Each fax promotes Antech's HealthTracks platform and the Antech diagnostic services, laboratory services, and supplies available through that platform.

19. HealthTracks is not promoted merely as a source of general information. The faxes expressly encourage veterinary practices to use HealthTracks to order Antech's commercially available diagnostic services and laboratory supplies.

20. Exhibit A announces "New HealthTracks® Features - Available To You Today!" and describes HealthTracks as, "All of your practice. One digital center. Powered by Antech®."

21. Exhibit A tells recipients they can use HealthTracks to order diagnostics, manage diagnostic results, create personalized pet owner-friendly result summaries, and use other features associated with Antech's diagnostic services.

22. Exhibit A also promotes the quality of HealthTracks and Antech's diagnostic services. Under the heading "A Better Diagnostic Workflow with HealthTracks," Antech states that HealthTracks provides "access to all your Antech diagnostics within one innovative digital platform," thereby "simplifying your practice's diagnostic workflow" and "helping you to provide the best care for your patients."

23. Exhibit A promotes HealthTracks as a convenient and beneficial means of obtaining and using Antech's commercially available diagnostic services and encourages recipients to order those services through HealthTracks.

24. Exhibit B similarly directs recipients to "Log into your new HealthTracks today!" and announces, "New Features Available to You!"

25. Exhibit B promotes HealthTracks by telling veterinary practices that the platform "simplifies your practice's diagnostic workflow" and identifying features including clinic reports,

invoice management, customer support, and the ability to "[o]rder your reference laboratory supplies."

26. Exhibit B directs recipients to HealthTracks.com to use these features and encourages them to bookmark the site.

27. Exhibit C more explicitly promotes commercial use of HealthTracks. Its headline directs recipients to "Log into HealthTracks for all your diagnostic needs today!"

28. Exhibit C tells recipients that through HealthTracks they can "[r]equest add-ons, rechecks, or place new lab orders," "[s]ubmit an order for reference laboratory supplies," "[p]ay invoices," and "[a]ccess our full test guide."

29. Exhibit C also promotes use of HealthTracks by offering recipients an opportunity to win lunch for their practices, valued at up to $200, in exchange for providing feedback concerning why they began using HealthTracks and what they like about it.

30. Exhibits A-C encourage veterinary practices to use HealthTracks to place new diagnostic orders, request additional diagnostic services, order laboratory supplies, and pay Antech invoices. The faxes thus promote commercial transactions involving Antech's diagnostic services and supplies and have profit as an aim.

31. Exhibits A-C all close with the same promotional statement: "Antech is committed to supporting veterinary care teams with a flexible, can-do spirit resulting in healthy pets, happy pet parents, and a high-performing practice," followed by Antech's telephone number, 1-800-872-1001, and website, antechdiagnostics.com.

32. Antech promotes HealthTracks as making its diagnostic services easier and more convenient to obtain and use. By promoting those features and encouraging veterinary practices to use HealthTracks, the faxes promote the availability and quality of Antech's underlying diagnostic

services and supplies. The commercial character of the faxes does not depend on whether Antech separately charges customers to use HealthTracks.

33. Antech did not have Plaintiff's prior express invitation or permission to send advertisements by fax.

34. None of the faxes attached as Exhibits A-C contains an opt-out notice.

35. Plaintiff uses his fax machine to send and receive urgent, important, and confidential information, including patient medical records, not to send or receive unsolicited advertisements.

36. Unlike paper mail delivered to a postal mailbox, the advertisements at issue were transmitted directly to Plaintiff's ten-digit fax number and received on Plaintiff's fax machine, equipment Plaintiff maintains for authorized veterinary-practice communications.

37. Plaintiff's fax machine automatically printed Exhibits A-C upon receipt, consuming Plaintiff's paper and toner.

38. The documents received by fax had to be reviewed to determine whether they were authorized or important communications concerning a patient or treatment.

39. Reviewing Antech's unsolicited advertisements consumed Plaintiff's time and interfered with Plaintiff's interest in maintaining his fax machine for authorized business communications.

40. The unsolicited advertisements used Plaintiff's fax machine and other resources for Antech's advertising purposes without Plaintiff's permission.

41. The harms caused by the unsolicited advertisements include the use of recipients' fax equipment and resources, consumption of paper and toner when automatically printed, invasion of privacy and seclusion, and the time required to review the faxes.

42. The TCPA permits a person or entity to maintain an action "to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(b)(3)(B).

43. For himself and each class member, Plaintiff seeks statutory damages of $500 for each unsolicited advertisement Antech sent by fax in violation of the TCPA during the statutory period.

## CLASS REPRESENTATION ALLEGATIONS

44. Plaintiff brings this action on behalf of himself and a class of all other persons and entities who were faxed one or more Antech advertisements during the four-year limitations period.

45. The proposed class is defined as follows:

> All persons and entities sent, during the four years preceding the filing of this action, one or more facsimiles promoting Antech's HealthTracks platform or Antech diagnostic services, laboratory services, or supplies available through HealthTracks.

Excluded from the class are Antech, its employees, officers, directors, shareholders, legal representatives, and any judge assigned to this action, and his or her immediate family.

46. Plaintiff anticipates modifying the proposed class definition, including proposing subclasses if appropriate, after conducting discovery.

47. This action is brought and may be properly maintained as a class action pursuant to Fed. R. Civ. P. 23. The action satisfies Rule 23(a)'s numerosity, commonality, typicality, and adequacy requirements. The questions of law or fact common to the class predominate over questions affecting only individual members, and a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy under Rule 23(b)(3).

**Numerosity/Impracticality of Joinder**

48. Exhibits A-C are standardized, professionally prepared form advertisements suitable for distribution to veterinary practices generally rather than communications created specifically for Plaintiff.

49. Based on the standardized nature of the advertisements and the repeated transmissions to Plaintiff, Plaintiff alleges on information and belief that Antech sent the same or materially similar advertisements to more than 40 veterinary practices and other recipients.

50. Plaintiff does not know the number of class members or their identities but intends to discover them in Antech's records or the records of third parties.

**Commonality and Predominance**

51. There is a well-defined community of interest among the class members.

52. Common questions of law or fact predominate over any question affecting only individual members of the class. The common legal and factual questions include, but are not limited to, the following:

a. Whether Antech or someone acting on its behalf faxed material advertising the commercial availability or quality of its property, goods, or services;

b. Whether Antech had a policy or practice of obtaining prior express invitation or permission before sending HealthTracks advertisements by fax;

c. Whether Antech's HealthTracks fax advertisements contained the opt-out notice required for the established-business-relationship exception;

d. Whether the Court should award statutory damages to Plaintiff and the other class members;

e. Whether Antech violated the TCPA knowingly or willfully and, if so,

whether the Court should treble the statutory damages; and

f. Whether the Court should enjoin Antech from sending unsolicited advertisements by facsimile.

**Typicality of Claims**

53. Plaintiff's claims are typical of the claims of the other class members because Plaintiff received the same or materially similar HealthTracks advertisements through the same fax-advertising practices challenged on behalf of the class. Plaintiff's claims arise from the same course of conduct and are based on the same legal theory as the claims of the class.

**Adequacy of Representation**

54. Plaintiff is an adequate representative of the class. Plaintiff's interests do not conflict with the interests of the class. Plaintiff has retained counsel competent and experienced in complex class action litigation, and TCPA litigation in particular, and Plaintiff intends to vigorously prosecute this action. Plaintiff and his counsel will fairly and adequately protect the interests of members of the class.

**A Class Action is an Appropriate Method to Adjudicate this Controversy Fairly and Efficiently**

55. A class action is an appropriate method for the fair and efficient adjudication of this controversy. The likelihood of individual class members prosecuting separate claims is remote. Individual litigation would burden the court system. Relief concerning the rights of the entire class, including Plaintiff, would be proper. Plaintiff envisions no difficulty in the management of this class action.

**COUNT I**

56. Plaintiff brings Count I on behalf of himself and a class of similarly situated persons and entities.

57. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

58. The TCPA prohibits using "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement" except under circumstances not applicable here. 47 U.S.C. § 227(b)(1)(C).

59. The TCPA defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

60. The TCPA provides a private right of action for injunctive relief and for actual monetary loss or $500 for each violation, whichever is greater, and permits the Court to increase damages to as much as $1,500 per violation for a willful or knowing violation. 47 U.S.C. § 227(b)(3).

61. Among the statutory requirements for the established-business-relationship exception, an unsolicited fax advertisement must contain the opt-out notice required by 47 U.S.C. § 227(b)(1)(C)(iii) and § 227(b)(2)(D).

62. Exhibits A-C promote Antech's commercially available diagnostic services, laboratory services, and supplies by encouraging recipients to use HealthTracks to order and manage those services and supplies.

63. Antech did not have Plaintiff's prior express invitation or permission to send any advertising material by fax.

64. Exhibits A-C do not contain an opt-out notice.

65. Antech violated the TCPA by faxing Exhibits A-C to Plaintiff without his prior express invitation or permission. On information and belief, Antech used the same or similar fax-

advertising practices to send HealthTracks advertisements to other recipients without their prior express invitation or permission.

66. Because Exhibits A-C contain no opt-out notice, Antech cannot satisfy the statutory requirements for the established-business-relationship exception as to those advertisements. 47 U.S.C. § 227(b)(1)(C)(i)-(iii).

67. Antech sent the advertisements or caused them to be sent to Plaintiff and the other recipients. The advertisements speak in Antech's voice, display Antech's name and logo, promote Antech's diagnostic services and HealthTracks platform, and direct recipients to Antech's websites and telephone number. To the extent Antech used a third-party fax broadcaster to transmit the advertisements, the identity of that entity and the division of responsibility for creating, authorizing, and transmitting the advertisements are peculiarly within Antech's possession.

68. Antech's actions caused harm. The advertisements used Plaintiff's and class members' fax equipment and resources for Antech's advertising purposes, invaded recipients' privacy and seclusion, consumed paper and toner when automatically printed, interfered with authorized fax communications, and required recipients to spend time reviewing the faxes to determine their source, purpose, and nature.

69. Plaintiff does not seek to recover for actual monetary loss. Rather, for himself and every other member of the class, Plaintiff seeks an award of $500 in damages for each violation of the TCPA.

WHEREFORE, Plaintiff demands judgment in favor of himself and all others similarly situated and against Antech as follows:

A. That the Court adjudge and decree that the present case may be maintained as a class action, certify a class, appoint Plaintiff as the representative, and appoint

Plaintiff's counsel as counsel for the class;

B. That the Court award $500 in damages for each of Antech's violations of the TCPA;

C. That, if it finds that Antech violated the TCPA knowingly or willfully, the Court increase the amount of the award to an amount equal to not more than $1,500 per violation;

D. That the Court enter appropriate injunctive relief prohibiting Antech from sending advertisements by fax in violation of 47 U.S.C. § 227(b)(1)(C); and

E. That the Court award costs and such further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 24, 2026

Respectfully submitted,

BRIAN C. ANMUTH, VMD d/b/a SIMMONS ANIMAL HOSPITAL, individually and as the representative of a class of similarly-situated persons and entities,

By: s/Alan C. Milstein, Esquire
One of their attorneys

Alan C. Milstein
SHERMAN, SILVERSTEIN, KOHL,
ROSE & PODOLSKY, P.A.
308 Harper Drive, Suite #200
Moorestown, NJ 08057
Phone: 856-210-9020
Email: amilstein@sskrplaw.com

Phillip A. Bock (*pro hac vice* to be submitted)
CLASS LAWYERS, LLC
595 NE 92nd Street
Miami Shores FL 33138
Phone: 312-658-5501
Email: phil@classlawyers.com